Wanamaker, J.
It is admitted in this case that if Fred Ransom were the natural child of said Emery Ransom and wife the judgment of the court of common pleas would be valid, but owing to the fact that he was the adopted son it is urged that the adopting parents had no right under the federal or state statutes to recover damages through the personal representatives for wrongful death.
The federal statute in question, so far as pertinent, reads as follows:
“In case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee’s parents; and, if none, then of the next of kin dependent upon such employee.” 35 U. S. Stats, at Large, 65, C. 149; passed April 22, 1908.
It is quite evident that much depends upon the construction of the words “parents” and “children.” There is no limitation or qualification of the words under the federal statute. The rule followed by federal courts in construing the statute, however, has been to attach to it the meaning given by the state of the forum in which the employe resided, and therefore we shall have to look to the *226 Ohio statute to determine what is meant by the word “parents.”
The Ohio statute, Section 10772, General Code, prior to the amendment of February 27, 1913 (103 O. L., 116), read as follows:
“Such action shall be for the exclusive benefit of the wife, or husband, and children, or if there be neither of them, then of the parents and next of kin of the person.whose death was so caused: It must be brought in the name of the personal representative of the deceased person; and * * * the jury may give such damages, not exceeding in any case ten thousand dollars, * * * as the jury may think proportioned to the pecuniary injury resulting from such death, to the persons respectively for whose benefit the action was brought,” etc.
It will be observed here that the same words, “parents” and “children,” are used without limitation or qualification as are used in the federal . statute.
Another Ohio statute, however, which may be known as the adopting statute of Ohio, reads as follows:
“Sec. 8029. When the foregoing provisions are complied with,- if the court is satisfied of the ability of the petitioner to bring up and educate the child properly, having reference to the degree and condition of its parents, and the fitness and propriety of such adoption, it shall make an order setting forth the facts, and declaring that, from that date, to all legal intents and purposes, -such child is the child of the petitioner, and that its name is thereby changed.”
*227 Then follows Section 8030, General Code, to the effect:
“The natural parents, * * ' * by such order shall be divested of all legal rights and obligations in respect to the child, and it be free from all legal obligations of obedience and maintenance in respect to them. Such child shall be the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock,” etc.
It is, therefore, contended by the plaintiff in error that the word “parent,” as used in the foregoing statutes, includes adopting parent as well as natural parent.
These sections of the statutes (Sections 8029 and 8030, General Code) are so plain and palpable that they need no construction. They are their own interpreters. Thousands of children who otherwise, through some misfortune denying them proper natural parentage, have been by the law of the land, the adoption statutes, provided with comfortable homes and legal parents. . Certainly, where statutes are so simple and so certain of their purpose and provisions as the statutes in question, no court should pervert or divert their terms so as to defeat the sound and wholesome public policy announced in these most humanitarian laws, providing as they do children for childless parents and parents for parentless children.
When Section 8029 provides that upon such adoption such child is the child of the adopters “to all legal intents and purposes” it is difficult to un *228 derstand by what process of legal logic the rights shall be cut down or impaired from the rights it would have as a child born in lawful wedlock. And if such child shall have all the legal rights of a natural child, the statute wisely provided that such adopting parent should have all the legal rights of a natural parent save those expressly excepted.
Lest there be any possible mistake as'to the force of said Section 8029, General Code, Section 8030, General Code, above quoted, again uses similar language, as follows:
“Such child shall be the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges and subject to all the obligations of a child of such person begotten in lawful wedlock.”
And further provides that “The natural parents * * * by such order shall be divested 'of all legal rights and obligations in respect to the child,” etc.
This language is not only clear but convincing and conclusive as to the purpose and spirit of the statute.
Additional force is given to these provisions of the foregoing statutes by the last four lines of Section 8030, which read:
“But on the decease of such person and the subsequent decease of such adopted child without issue, the property of such adopting parent shall descend to his or her next kin, and not to the next kin of such adopted child.”
*229 Here is the sole and only exception to the general, sweeping, omnibus provisions putting the adopted child and adopting parent in the shoes of the natural child and natural parent respectively.
The old familiar rule that the expression of one exception excludes all other exceptions clearly and conclusively applies in favor of the natural parent.
But for the adoption said Henry Fassett, the natural parent, would be the sole beneficiary in an action for the recovery of damages for the wrongful death of his son.
But if the statute in question means anything at all he was “divested of all legal rights,” one of which is the right to recover through the personal representative for damages for the wrongful death of his son.
In this view of the case the judgment of the court of appeals is reversed and the judgment of the court of common pleas affirmed.

Judgment reversed.

Nichols, C. J., Johnson, Donahue, Newman, Jones and Matthias, JJ., concur.